IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| EWELL E. PARKER, JR., | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 2-11-CV-00159-J |
| OUTDOOR CHANNEL HOLDINGS., a Delaware Corporation; THE OUTDOOR CHANNEL, INC., a Nevada Corporation; REEL IN THE OUTDOORS, LTD., an Ohio Limited Partnership, | § § § § § § § | |
| Defendants. | § § | |

### Memorandum Opinion and Order

Before the Court is Defendants' *Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment*. Plaintiff has responded and Defendants have replied. For the following reasons, summary judgment is DENIED, and partial summary judgment is GRANTED in part.

### BACKGROUND

Plaintiff, Ewell Parker, claims that Defendants infringed his copyrights to a televised competitive bass fishing series (specifically, three series)[1] known generically as *Match Fishing*, which he created, wrote, produced, and directed. Parker applied for and received thirteen copyright certificates regarding *Match Fishing*: four of competition rules, with the first two certificates issued in 1978 and two modifications thereafter; and nine for individual episodes scattered from 1981 to 1988. Plaintiff has produced video copies of four of these nine episodes.

---

[1] The series were known as "Challenge Match Fishing," "National Match Fishing Championship," and "American Club Fishing Championship."

Plaintiff asserts that in 2010 he became aware of a television show known as *Ultimate Match Fishing*, produced by Reel in the Outdoors and aired since 2005 on The Outdoor Channel—a cable television channel owned by Defendants Outdoor Channel Holdings and The Outdoor Channel, Inc. (collectively "Outdoor Channel"). The Court has been provided one episode of *Ultimate Match Fishing*. Plaintiff pleads infringement against all three defendants or, in the alternative, infringement by Reel in the Outdoors and contributory infringement by Outdoor Channel. Specifically, Plaintiff claims that *Ultimate Match Fishing* copies "original constituent elements" of *Match Fishing*, violating his protected copyright. Plaintiff lists these constituent elements as:

a. Two competitors in a one-on-one competition fishing out of the same boat to determine a winner of the competition;

b. A tournament bracket format for the television series under which the winner of each one-on-one competition advances to the next round until an overall champion is determined;

c. Each round of the competition, a match, being divided into four periods;

d. A division of the arena, i.e. the boat itself and the water around the boat, where the competition is held;

e. Division of the arena by the centerline of the boat, separating the front half of the boat from the back half of the boat, the imaginary length of which extends beyond the boat and bisects the water surface of the lake;

f. The front half of the boat being occupied by the competitor in control of the boat, the back half of the boat being occupied by a competitor having no control of the boat;

g. Selection of control of a boat at the beginning of each match determined by a toss of a coin;

h. Control of the boat alternating between the two competitors each period;

i. The competitors being prohibited from crossing, casting, or landing a fish beyond the dividing line separating the front and black halves of the boat and bisecting the surface of the water;

j. Providing a referee dressed in uniform to control the match and enforce the rules;

k. The referee penalizing the competitors who cross, cast, or land a fish beyond the dividing line by deducting weight from the total weight of the fish caught during the match;

l. Determining the winner of each match by total weight of fish caught during the competition;

m. Following the competitors' boat with a camera crew to record the competition and the interaction of the contestants;

n. Commentary from an announcer describing, among other things, the competitors, the strategy employed and the interaction between the competitors;

o. Placing microphones on the competitors in order to record their conversations and comments; and

p. Encouraging talk and banter between the competitors to draw viewers into the drama of the competition.

On September 26, 2012, Outdoor Channel filed (and Reel in the Outdoors joined) the instant motion. In it, Defendants assert that summary judgment is appropriate because *Match Fishing* and *Ultimate Match Fishing* lack "substantial similarity." Alternatively, even if the Court finds a genuine issue of material fact regarding substantial similarity, Defendants seek partial summary judgment that Plaintiff's failure to produce a copy of five allegedly infringed episodes precludes a side-by-side comparison and, therefore, a finding of infringement as to those five episodes. Defendants also request partial summary judgment that Plaintiff's textual rules copyrights were not infringed as a matter of law and that, even if infringement can be found as to the rules, all four rules copyrights are a single work for statutory damages purposes because the latter three are derivative of the first.

## LEGAL STANDARDS

A court may render a summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (initial burden is on movant to show entitlement to summary judgment

with competent evidence). A material fact issue is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The substantive law governing the case will identify which facts are material. *Id.* at 249. The party opposing judgment must show "specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery . . . ." *Brown v. Texas A&M University*, 804 F.2d 327, 333 (5th Cir. 1986).

"Summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). The Court must resolve "all factual uncertainties and mak[e] all reasonable inferences in favor of the nonmoving party." *Id.* If a rational trier of fact, based upon the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992).

"Finally, where the non-moving party has presented evidence to support the essential elements of its claims but that evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). Legal conclusions and general allegations do not satisfy this burden. *Id.* at 250; *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (ultimate or conclusory facts are insufficient to either support or defeat a motion for summary judgment).

To establish infringement, a copyright owner must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (*quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). As to the first prong, a valid certificate of registration is

*prima facie* evidence that a copyright is legitimate and that the registrant owns the copyright. *Id.*; 17 U.S.C. § 410(c) (2012).

Under the second prong, a plaintiff must show two things to prove actionable copying: factual copying and substantial similarity. Factual copying means that the defendant "actually used the copyrighted material to create his own work." *Id.* (*citing Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994)). A plaintiff makes this showing either with direct evidence of copying or with circumstantial evidence "demonstrating both (1) that the defendant had access to the copyrighted work and (2) that the two works are 'probatively' similar." *Id.* (*citing Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001); *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 701 (2d Cir. 1992)). "Access" means that the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work. *Id.* (*citing Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978)). "Probative similarity," a lower bar than "substantial similarity," means that the works, "when compared as a whole, are adequately similar to establish appropriation." *Id.* at 141–42 (*citing Peel*, 238 F.3d at 397).

If the plaintiff proves factual copying, he must next demonstrate that the allegedly infringing work is "substantially similar" to "protectable elements" of the infringed work. Unprotected elements include (1) mere ideas; (2) ideas susceptible to just one form of expression, creating a "merger" between idea and expression, *Veeck v. Southern Bldg. Code Cong. Int'l., Inc.*, 293 F.3d 791, 800–01 (5th Cir. 2002); (3) *scenes á faire*, which are "expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting,"[2] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823,

---

[2] To determine the extent of the merger and *scenes á faire* doctrines, the Court must define the "idea" and "topic" expressed by the work.

838 (10th Cir. 1993) (*cited by Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 536 (5th Cir. 1994)); *see also* 17 U.S.C. § 102(a)–(b); and (4) unoriginal expressions. *Feist*, 499 U.S. at 348 ("[C]opyright protection may extend only to those components of a work that are original to the author."). Thus, as a preliminary step to determining substantial similarity, "a court may have to filter out ideas, processes, facts, idea/expression mergers, and other unprotectable elements of plaintiff's copyrighted materials . . . ." *Kepner-Tregoe*, 12 F.3d at 534.

Even if all divisible elements of a work are filtered out as unprotected, the copyrighter's selection and arrangement of otherwise unprotected elements can be protectable, if original. "The mere fact that component parts of a collective work are neither original to the plaintiff nor copyrightable by the plaintiff does not preclude a determination that the combination of such component parts as a separate entity is both original and copyrightable." *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 388 (5th Cir. 1984); *see also Feist*, 499 U.S. at 348; *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009); *Sheehan v. MTV Networks*, 1992 WL 58876 (S.D.N.Y. Mar. 13, 1992) (*quoting Barris/Fraser Enters. v. Goodson–Todman Enters., Ltd.*, 5 U.S.P.Q. 1887, 1891 (S.D.N.Y. 1988)).

Notwithstanding the protectability of selection and arrangement of elements, a court should still designate protectable and unprotectable elements, lest a finding of infringement be based on the unprotectable elements. *See Apple Computer v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994).

Once the protectable elements—including selection and arrangement, if applicable—have been identified, "a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Gen.*

*Universal Sys.*, 379 F.3d at 141 (*quoting Creations Unltd. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (per curiam)). Typically, whether two works are substantially similar is a question for the trier of fact, but "summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression" or that the similarities between the two works concern only non-copyrightable elements of the plaintiff's work. *Id.* at n.18 (*citing Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999); *Peel*, 238 F.3d at 395).

### SUMMARY JUDGMENT

Defendants seek summary judgment based on a lack of substantial similarity between protectable elements of the *Match Fishing* and *Ultimate Match Fishing* programs. As described by Plaintiff, *Match Fishing* contains 16 constituent elements. Plaintiff's expression of each element is protectable if it is original and the element is neither common to the "topic" of *Match Fishing* (a *scene á faire*) nor a matter so limited to a single method of expression as to be merged with the "idea" of *Match Fishing*. As the following discussion and table show, some constituent elements are protectable.

Defendants first assert that elements (a), (b), (c), (l), (n), (o), and (p) are not original. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345–46 (1991).

Next, Defendants argue that elements (d), (g), (h), (j), (k), and (m) are *scenes á faire* flowing naturally from the topic of "sports competitions." Although defining topics is not an

exact science, "sports competitions" is too broad a definition of the topic here.[3] This definition would cast too wide a net, capturing as *scenes á faire* elements common to some competitions but unique to fishing shows. The original use in bass fishing competitions of elements common to other competitions might be protectable. *See, e.g., Sheehan v. MTV Networks*, 1992 WL 58876 at *4 (S.D.N.Y. Mar. 13, 1992) ("[H]and-held devices that shoot beams of light were used in both the television show 'Star Trek' and the game 'Laser Tag.' However, MTV has not and apparently cannot demonstrate that the laser gun has ever been incorporated in a game show format similar to plaintiffs' . . . ."). Consequently, a more appropriate definition of *Match Fishing*'s common topic is "televised bass fishing competitions."

Defendants then argue that the expression of elements (e), (f), (h), (i), (j), (k) and (m) is merged with the idea of "a reality television competition about bass fishing." As with the "topic" when evaluating *scenes á faire*, the Court must define Plaintiff's "idea" at an appropriate level of abstraction to divide unprotected from protectable expression of that idea. *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 801 (5th Cir. 2002) (*en banc*).

Discussing the idea of *Match Fishing* in his deposition, Plaintiff stated that his purpose was to create televised drama out of a fishing competition—drama that he thought was impossible under the common "club fishing tournament" format of allowing more than a dozen boats to compete simultaneously across an entire lake. Seeking to "make a good television event" and make "drama out of it," he decided that pitting each episode's two competitors in a

---

[3] Definitions set in other cases also demonstrate that overbreadth should be avoided. *See, e.g., Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 790 (S.D. Tex. 2009) (defining concept of teen novel and children's movie as "an imaginary world controlled by a character's mind or thoughts"—narrower than the also-applicable "imaginary worlds") (*citing Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) (finding common concept of *Jurassic Park* and children's book to be "a dinosaur zoo"—narrower than simply "dinosaur tales")); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159 (1986) (defining concept of novels as "stories of police work in the Bronx"—narrower than unqualified "stories of police work").

single boat would allow a camera to follow the action. To add structure, he created various rules: the centerline, alternating boat control, competition periods, tournament brackets, etc. His central idea was not simply a bass fishing competition—it was to be the first *televised* bass fishing competition. Accordingly, an appropriate definition of Plaintiff's "idea," like his "topic" for *scenes á faire* purposes, is "a televised bass fishing competition."

Defendants' arguments (originality, *scenes á faire*, and merger) as to each element are addressed in the following table.

| Constituent Element | Validity of Defendants' Arguments |
|---|---|
| a. Two competitors in a one-on-one competition fishing out of the same boat to determine a winner of the competition. | <u>Originality</u>: Plaintiff admits that he did not invent the idea of two people fishing in a boat, but the idea that these two are in a one-on-one competition might be original to him. |
| b. A tournament bracket format for the television series under which the winner of each one-on-one competition advances to the next round until an overall champion is determined. | <u>Originality</u>: Plaintiff admits that his idea of a bracketed bass fishing tournament is not "unique." |
| c. Each round of the competition, a match, being divided into four periods. | <u>Originality</u>: Plaintiff admits that his idea of a fishing tournament split into four parts is not original. |
| d. A division of the arena, *i.e.*, the boat itself and the water around the boat, where the competition is held. | *Scene á faire*: dividing the arena is a stock element of televised bass fishing competitions—even if the division is simply the immediate area around one competitor's boat. |
| e. Division of the arena by the centerline of the boat, separating the front half of the boat from the back half of the boat, the imaginary length of which extends beyond the boat and bisects the water surface of the lake. | <u>Merger</u>: not merged with the idea of a televised bass fishing competition, as such competitions are carried out in various ways without dividing boat and lake with a single line. |
| f. The front half of the boat being occupied by the competitor in control of the boat, the back half of the boat being occupied by a competitor having no control of the boat. | <u>Merger</u>: not merged with the idea of a televised bass fishing competition, as such competitions can be carried out in various ways without dividing a boat into two anglers' areas. |
| g. Selection of control a boat at the beginning of each match determined by a toss of a coin. | *Scene á faire*: a coin toss is a common element to decide uncontestable matters in some competitions, but whether it is common to televised bass fishing competitions is unclear. |

| | |
|---|---|
| h. Control of the boat alternating between the two competitors each period. | *Scene á faire*: alternation of control is common to sports competitions generally; it is apparently uncommon to televised bass fishing competitions.<br>Merger: not merged with the idea of a televised bass fishing competition, as such competitions are carried out in various ways without competitors alternating control of a boat. |
| i. The competitors being prohibited from crossing, casting, or landing a fish beyond the dividing line separating the front and black halves of the boat and bisecting the surface of the water. | *Scene á faire*: prohibitions against crowding another angler and crossing his fishing line are common to bass fishing competitions (known as the "sportsmanship rule") but prohibitions against crossing an imaginary line are apparently not.<br>Merger: not merged with the idea of a televised bass fishing competition, as such competitions are carried out in various ways without imaginary lines. |
| j. Providing a referee dressed in uniform to control the match and enforce the rules. | *Scene á faire*: uniformed referees (as opposed to tournament officials generally) are common to sports competitions, but they are apparently uncommon to televised bass fishing competitions.<br>Merger: expression not merged with the idea of a televised bass fishing competition, which can be carried out in various ways without a uniformed referee in constant control of the match. |
| k. The referee penalizing the competitors who cross, cast, or land a fish beyond the dividing line by deducting weight from the total weight of the fish caught during the match; | *Scene á faire*: weight penalties for rule-breaking are common to televised bass fishing competitions.<br>Merger: expression not merged with the idea of a televised bass fishing competition, as penalties can be assessed in various ways. |
| l. Determining the winner of each match by total weight of fish caught during the competition. | Originality: Plaintiff admits that his idea is not original. |
| m. Following the competitors' boat with a camera crew to record the competition and the interaction of the contestants. | *Scene á faire*: element is now common to televised bass fishing competitions, but apparently not when Plaintiff created *Match Fishing*.<br>Merger: expression merges with the idea of a televised bass fishing competition. |
| n. Commentary from announcer describing, among other things, the competitors, the strategy employed, and the interaction between the competitors. | Originality: Plaintiff admits that his idea is not original. |
| o. Placing microphones on the competitors in order to record their conversations and comments. | Originality: Plaintiff admits that his idea is not original. |
| p. Encouraging talk and banter between the competitors to draw viewers into the drama of the competition. | Originality: Plaintiff admits that his idea is not original. |

Some divisible elements are not protectable: (b) a tournament bracket; (c) dividing matches into periods; (d) an arena division; (k) weight penalties for crossing line; (l) determining a winner by fish weight; (m) following competitors' boat with camera crew; (n) commentary from announcer; (o) placing microphones on competitors; (p) encouraging interaction. The rest of the constituent elements are, at this stage, protectable.

Beyond constituent elements, "if the selection and arrangement are original, these elements of the work are eligible for copyright protection." *Feist*, 499 U.S. at 348; *see also Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 388 (5th Cir. 1984) ("[T]he [district] court should have examined "The Country Kids Show" in its entirety, and made fact findings on the originality and copyrightability of the show as a package."); *Barris/Fraser Enters. v. Goodson-Todman Enters., Ltd.*, 1988 U.S. Dist. LEXIS 146 (S.D.N.Y. Jan. 4, 1988) (deciding that television game show format was entitled to copyright protection). Selection and arrangement of the constituent elements of *Match Fishing* required a minimal degree of creativity, so selection and arrangement are also elements—indeed, key elements—that are eligible for copyright protection.

Finally, to determine substantial similarity, the protectable elements in *Match Fishing* must be compared with *Ultimate Match Fishing* from the standpoint of a lay observer viewing the works as a whole. *See, e.g., Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d 391, 397–98 (5th Cir. 2001) (reversing district court's finding of no substantial similarity and remanding for jury determination).

A reasonable trier of fact could find the two programs substantially similar. Both shows are television programs that depict a contest (part of a larger tournament) between two bass fishermen who fish out of a single boat. A centerline in the boat, which imaginarily extends

beyond the boat and across the water, delineates each fisherman's "area." A referee imposes weight penalties for crossing the centerline. The goal of the competition is to catch the most fish, by weight, by the end of the competition, which is divided into quarters. Competitors alternate control of the boat, and control is determined by a pre-match coin toss. Hosts introduce the competitors, interview competitors pre- and post-competition, and provide commentary during the competition. They also explain the competition rules with the assistance of a graphic showing a boat divided by a center line.

*Ultimate Match Fishing* has one referee instead of the four to six in *Match Fishing*; there is more lighthearted banter—in the one episode given the Court, anyway—between competitors and commentators of *Ultimate Match Fishing*; weight penalties for casting over the center line are different, as is the delineation of time periods; and there is more use of music and flashy production value in *Ultimate Match Fishing*—largely attributable to more modern technology. Notwithstanding these minor differences, substantial similarity does not mean identity, and a trier of fact could find substantial similarity in this case. Here, as in *Barris/Fraser Enters.*, 1988 U.S. Dist. LEXIS 146, at *17, "it cannot be said, as a matter of law, that there is no similarity of protectable material in the overall composition of the shows." Without saying that substantial similarity *does* exist, a reasonable jury could determine that it does. Summary judgment is therefore inappropriate.

Because infringement is possible, contributory infringement is also possible.

## PARTIAL SUMMARY JUDGMENT

Arguing for partial summary judgment, Defendants first seek a ruling that, as a matter of law, infringement can be found as to none of the five missing copyrighted episodes because they cannot be compared with *Ultimate Match Fishing* episodes.

The trier of fact must conduct a side-by-side comparison of the two "works," *Bridgmon v. Array Systems Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999), and Defendants concede that each episode is a "work" for statutory damages purposes. They contend that because five episodes are unavailable for comparison, infringement cannot be shown as to them. Further, Defendants argue, secondary evidence of the content of the episodes—such as oral testimony—will be unfairly one-sided, and Defendants will be unable to adequately challenge Plaintiff's assertions without access to the missing episodes.

Plaintiffs argue that it is the format (rules, structure, sequence, etc.) of the television program that needs comparing—not the unique content of individual episodes—and that the format is "nearly identical" across every episode, including those that are missing.[4] Plaintiff claims that the five missing episodes would be cumulative evidence of *Match Fishing*'s protected elements and format found in *every* episode, given that four copyrighted and dozens of uncopyrighted episodes, in addition to testimony as to the missing episodes' content, are available.[5]

A trier of fact need not view every episode of competing television programs when conducting a side-by-side comparison not of individual episodes' unique content but of the program's format or package. *See Funky Films, Inc. v. Time Warner Entertainment Co.*, 462

---

[4] Whether multiple statutory damages awards are allowed when a single television program format or package is infringed is a question that Defendants reference obliquely in their reply: "Plaintiff is conceding that his registered episodes . . . may all be derivative works of his written concept for *Match Fishing*. Under such a scenario, infringement of all registered *Match Fishing* episodes would be appropriately treated as 'one work' for purposes of statutory damages." The problem of allowing multiple statutory damages awards for a single format is that a format could be unlawfully copied from any one copyrighted episode (or "treatment"), and the format used in every copyrighted episode might be infringed by any one copying episode. If a format, classified as a compilation, is the thing infringed, then it, like a derivative work, would be a single work for statutory damages purposes, regardless of the number of episodes copyrighted. 17 U.S.C. § 504(c)(1). As Professor Nimmer notes, this area is unclear. 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.09 (2012).

[5] Defendants misconstrue this Court's September 6, 2012 order to say that the uncopyrighted episodes are irrelevant and inadmissible as evidence of *Match Fishing*'s format. The Court said no such thing.

F.3d 1072 (9th Cir. 2006) (affirming summary judgment where district court reviewed plaintiff's screenplay and first three episodes of defendants' television series); *Castorina v. Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) ("[T]he Court *can* consider "*Pros v. Joes*" actual content in deciding Defendant's motion. But the Court's limited time has not permitted it to watch the episodes produced to date. Instead, the Court relies on the parties' descriptions of these episodes . . . ."); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007) (comparing plaintiff's script and treatment to just eight episodes of defendants' 150-episode series); *see also Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491 (5th Cir. 2012) (holding that, where testimony of works' content was allowed and jury was given entire works in deliberations, district court did not abuse discretion by disallowing as cumulative the reading of two complete novels and showing of two full feature films on the record).

If the *Match Fishing* format is the basis of an infringement finding, the only question as to the missing episodes is whether they also contained the format. Although the jury won't have all of the episodes, and those missing five would certainly make Plaintiff's task simpler, secondary evidence—such as oral testimony of witnesses who produced, participated in, or viewed those episodes—will be admissible to prove the content of the missing episodes as long as there is no bad faith on Plaintiff's part regarding their absence. Fed. R. Evid. 1004. This secondary evidence, which must be very persuasive given Defendants' disadvantages in confronting the absence of primary evidence, might be sufficient to establish the missing episodes' content. *See, e.g., Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576–77 (5th Cir. 2003); *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986); 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.09 (2012) ("If the plaintiff is unable to attach or produce a copy of his own work, the court may rely upon plaintiff's oral testimony as to its

contents, but in such a case, an infringement claim will be granted only under exceptional circumstances where the proof is both clear and convincing."). There is a fact question whether protectable elements of the five missing episodes are, as Plaintiff asserts, "nearly identical" to those in the produced episodes. Although Plaintiff has a difficult task, partial summary judgment on this point is denied.

Defendants' remaining partial summary judgment arguments are that infringement cannot be found as to Plaintiff's rules and that, even if it can, Plaintiff's four rules filings constitute a single work for statutory damages purposes.

Regarding whether infringement might be found as to the rules, Defendants argue that textual rules cannot be infringed by producing and broadcasting a television show. Plaintiff claims that the format or treatment of *Match Fishing*, as expressed in the rules, was copied when *Ultimate Match Fishing* was produced and broadcasted as a television series. It is undisputed that the text of the rules was not copied.

Text, however, can theoretically be infringed by a television show; indeed, written "treatments" and books are often the basis for allegations that a television show infringes an existing copyright. *See, e.g., Funky Films*, 462 F.3d 1072; *Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1060 (C.D. Cal. 2010); *Rodriguez v. Heidi Klum Co., LLC*, 05-CIV-10218, 2008 WL 4449416 (S.D.N.Y. Sept. 30, 2008); *Bethea v. Burnett*, CV04-7690JFWPLAX, 2005 WL 1720631 (C.D. Cal. June 28, 2005); *Sheehan v. MTV Networks*, 1992 WL 58876 (S.D.N.Y. Mar. 13, 1992). Access and substantial similarity are often difficult to prove in such cases, and these matters will likely be more difficult for Plaintiff to prove as to his rules than to his episodes. The rules, however, combined with their copyright certificates, do describe enough of the format of *Match Fishing* to

deny partial summary judgment on this point. There is an issue of material fact whether the textual *Match Fishing* rules are infringed by *Ultimate Match Fishing*.

Finally, as to whether the four rules registrations constitute a single derivative work for statutory damages purposes, 17 U.S.C. § 101 defines "derivative work" as "a work based upon one or more pre-existing works . . . . A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a derivative work." "[A]ll the parts of a . . . derivative work constitute one work" for statutory damages purposes. *Id.* § 504(c)(1).[6]

The certificates of copyright registration are *prima facie* evidence that those copyrights are valid and of the facts stated in the certificates. *Id.* § 410. As Defendants point out and Plaintiff fails to rebut, in the applications and certificates is clear evidence that the latter three rules copyrights are derivative. The first rules application, entitled "Match Bass Fishing Rules for Television of National Match Bass Fishing Championship," is dated September 7, 1978. The Copyright Office mailed the certificate, numbered TX 107-429, to Plaintiff on October 16, 1978. During this process, on September 14, 1978, Plaintiff sent another application entitled "Match Bass Fishing Rules." In it, Plaintiff claimed that "registration for this work, or for an earlier version of this work" had "already been made in the Copyright Office" in 1978 but had not yet been returned. The earlier work consisted of "preexisting material" labeled as "specific rules." The "material added to this work" is labeled as "art work to illustrate the rules." The Copyright Office assigned number TX 108-745 to this artwork, which was added to the textual rules already in TX 107-429. The third rules application (in 1985) states that it adds rules #17–21 to

---

[6] As pointed out above at note 5, if Plaintiff recovers based only on his show's "format" or "package," then he might be limited to a single statutory damages award if that format or package is a compilation, as suggested by *Apple Barrel*, 730 F.2d at 388.

the sixteen rules already contained in TX 108-745.  The fourth (in 1987) replaces rules #14–21 and leaves untouched rules #1–13 already contained in TX 108-745.

The certificates show that the second application was meant to build on the first, and the third and fourth were meant to build on the second.  The applications note that the latter three are "compilations or derivative works."  These three are "based upon one or more pre-existing works" and are "revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship."  *See, e.g., Olem Shoe Corp. v. Washington Shoe Co.*, 09-23494-CIV, 2012 WL 28239 (S.D. Fla. Jan. 5, 2012).  Accordingly, to the extent that Plaintiff can prove infringement as to the textual rules, all four rules copyrights constitute one work for statutory damages purposes.

## CONCLUSION

Defendants' motion for summary judgment is DENIED.  Defendants' motion for partial summary judgment that infringement is impossible as to the missing five episodes is DENIED; their motion for partial summary judgment that Plaintiff's rules cannot, as a matter of law, be infringed by *Ultimate Match Fishing* is DENIED; and their motion for partial summary judgment that Plaintiff's rules constitute a single work for statutory damages purposes is GRANTED.

It is SO ORDERED.

Signed this the 12th day of December, 2012.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE